Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES REINHARDT, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| NORTONLIFELOCK INC., SUSAN P. BARSAMIAN, ERIC K. BRANDT, FRANK E. DANGEARD, NORA M. DENZEL, PETER A. FELD, KENNETH Y. HAO, EMILY HEATH, VINCENT PILETTE, and SHERRESE M. SMITH, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Charles Reinhardt ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to

- 1 -

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against NortonLifeLock Inc. ("NortonLifeLock" or the "Company") and the members of NortonLifeLock's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which NortonLifeLock will acquire Avast plc ("Avast") through NortonLifeLock's subsidiary Nitro Bidco Limited ("Bidco") (the "Proposed Transaction").

2. On August 10, 2021, NortonLifeLock and Avast issued a joint press release announcing that they had entered into a Co-operation Agreement, dated August 10, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, Avast shareholders will be entitled to elect to receive either: (i) $7.61 in cash and 0.0302 of a share of Company common stock (the "Majority Cash Option"); or (ii) $2.37 in cash and 0.1937 of a Company share (the "Majority Stock Option") (the "Merger Consideration").

3. On October 4, 2021, NortonLifeLock filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which

- 2 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

recommends that NortonLifeLock stockholders vote in favor of the issuance of new Company stock in connection with the Proposed Transaction (the "Stock Issuance"), omits or misrepresents material information concerning, among other things: (i) NortonLifeLock's and Avast's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Evercore Group L.L.C. ("Evercore"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, NortonLifeLock's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Stock Issuance. Plaintiff seeks to enjoin the stockholder vote on the Stock Issuance unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains offices in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NortonLifeLock.

9. Defendant NortonLifeLock is a Delaware corporation, with its principal executive offices located at 60 E. Rio Salado Parkway, Suite 1000, Tempe, Arizona 85281 and offices located in Culver City, California. NortonLifeLock is a global leader in consumer Cyber Safety, protecting and empowering people to live their digital lives safely. NortonLifeLock's shares trade on the Nasdaq Global Select Market under the ticker symbol "NLOK."

10. Defendant Susan P. Barsamian ("Barsamian") has been a director of the Company since 2019.

11. Defendant Eric K. Brandt ("Brandt") has been a director of the Company since 2020.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

12.     Defendant Frank E. Dangeard ("Dangeard") has been Chairman of the Board since December 2019, and a director of the Company since January 2007.

13.     Defendant Nora M. Denzel ("Denzel") has been a director of the Company since 2019.

14.     Defendant Peter A. Feld ("Feld") has been a director of the Company since 2018.

15.     Defendant Kenneth Y. Hao ("Hao") has been a director of the Company since March 2016.

16.     Defendant Emily Heath ("Heath") has been a director of the Company since January 2021.

17.     Defendant Vincent Pilette ("Pilette") is Chief Executive Officer ("CEO") of the Company, and has been a director since 2019.

18.     Defendant Sherrese M. Smith ("Smith") has been a director of the Company since January 2021.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Avast is a public company incorporated in England and Wales, with its principal executive offices located at Pikrtova 1737/1a, 140 00 Prague 4, Czech Republic.  It is a leading global cybersecurity provider that is dedicated to keeping people safe and private online.  Avast safeguards more than 435 million users

- 5 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

worldwide, protecting their digital data, identity and privacy, with 1.5 billion attacks and over 200 million new files blocked each month on average in 2020.  Avast offers security software under the Avast and AVG brands, in the form of both free and paid-for products.  Avast has customers in the vast majority of countries around the world.  Avast's shares trade on the London Stock Exchange under the ticker symbol "AVST."

21.    Bidco is a private company incorporated in England and Wales and a wholly-owned subsidiary of NortonLifeLock.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.    Founded in 1982, NortonLifeLock is a leading provider of consumer cyber safety solutions built around protecting and empowering people to live their digital lives safely.  NortonLifeLock serves over 80 million users in more than 150 countries, including 23 million direct customers.

23.    NortonLifeLock's service offerings is positioned across three key cyber safety pillars: Security, providing protection for PCs, Macs and mobile devices against malware, viruses, adware, ransomware and other online threats; Identity Protection, which includes monitoring, alerts and restoration services to protect the safety of customers; and Online Privacy, which provides enhanced security and online privacy through an encrypted data tunnel and other privacy monitoring services.

24.    NortonLifeLock's subscription-based cyber safety solutions are primarily sold direct-to-consumer through its NortonLifeLock and Avira websites, and indirectly

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

through partner relationships with retailers, telecom service providers, hardware original equipment manufacturers, and employee benefit providers. The acquisition of Avira in 2020 expanded NortonLifeLock's go-to-market into the freemium channel.

25. On July 27, 2021, NortonLifeLock announced its first quarter fiscal year 2022 financial results. GAAP revenue was $686 million during the quarter, up 12% compared to the same quarter of the prior year. First quarter non-GAAP diluted EPS was $0.42, up 35% year over year. Non-GAAP operating margin was 51.2%, up 410 bps from the prior year quarter. Bookings increased 12% in USD to $660 million. Direct customer count was 23.1 million, up 2.6 million from the year ago period. Reflecting on the Company's results and looking towards the future, defendant Pilette stated:

> Our Cyber Safety platform is designed to evolve to meet the needs of a consumer's digital life. This quarter reflects our strong execution and accelerating pace of innovation as we strengthen our foundation for long-term sustainable growth and bring our Cyber Safety offering to even more people.

**The Proposed Transaction**

26. On August 10, 2021, NortonLifeLock and Avast issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

TEMPE, Ariz. & PRAGUE & LONDON -- NortonLifeLock (NASDAQ: NLOK), a global leader in consumer Cyber Safety, and Avast (LSE: AVST), a global leader in digital security and privacy, are pleased to announce that they have reached agreement on the terms of a recommended merger of Avast with NortonLifeLock, in the form of a recommended offer by NortonLifeLock, for the entire issued and to be issued ordinary share capital of Avast.

Under the terms of the merger Avast shareholders will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available.  Based on NortonLifeLock's closing share price of USD 27.20 on July 13, 2021 (being the last trading day for NortonLifeLock shares before market speculation began in relation to the merger on July 14, 2021, resulting in the commencement of the offer period), the merger values Avast's entire issued and to be issued ordinary share capital between approximately USD 8.1B and USD 8.6B, depending on Avast shareholders' elections.

The boards of NortonLifeLock and Avast believe that the merger has compelling strategic and financial rationale and represents an attractive opportunity to create a new, industry-leading consumer Cyber Safety business, leveraging the established brands, technology and innovation of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

both groups to deliver substantial benefits to consumers, shareholders, and other stakeholders.

"This transaction is a huge step forward for consumer Cyber Safety and will ultimately enable us to achieve our vision to protect and empower people to live their digital lives safely," said Vincent Pilette, Chief Executive Officer of NortonLifeLock. "With this combination, we can strengthen our Cyber Safety platform and make it available to more than 500 million users. We will also have the ability to further accelerate innovation to transform Cyber Safety."

"At a time when global cyber threats are growing, yet cyber safety penetration remains very low, together with NortonLifeLock, we will be able to accelerate our shared vision of providing holistic cyber protection for consumers around the globe," said Ondřej Vlček, Chief Executive Officer of Avast.  "Our talented teams will have better opportunities to innovate and develop enhanced solutions and services, with improved capabilities from access to superior data insights.  Through our well-established brands, greater geographic diversification and access to a larger global user base, the combined businesses will be poised to access the significant growth opportunity that exists worldwide."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Strategic and Financial Benefits**

- Accelerates the transformation of consumer Cyber Safety with over 500 million users;

- Combines Avast's strength in privacy and NortonLifeLock's strength in identity, creating a broad and complementary product portfolio, beyond core security and towards adjacent trust-based solutions;

- Strengthens geographic diversification and facilitates expansion into the SOHO / VSB segments;

- Unlocks significant value creation through approximately USD 280 million of annual gross cost synergies[1], with additional upside potential from new reinvestment capacity for innovation and growth;

- Brings together two strong and highly experienced consumer-focused management teams.

The Merger will also enhance the financial profile of the combined company through increased scale, long-term growth, cost synergies with reinvestment capacity and strong cash flow generation supported by a resilient balance sheet, and is expected to drive double-digit EPS accretion within the first full year following completion of the Merger and double-digit revenue growth in the long-term.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Organization and Management**

Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a co-founder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

On completion of the merger, the combined company will be dual headquartered in Prague, Czech Republic, and Tempe, Arizona, USA, and will have a significant presence in the Czech Republic. The combined company will be listed on NASDAQ.

**The Proxy Statement Contains Material Misstatements or Omissions**

27.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to NortonLifeLock's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Stock Issuance.

28.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially

- 11 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading information concerning: (i) NortonLifeLock's and Avast's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Evercore.

***Material Omissions Concerning NortonLifeLock's and Avast's Financial Projections***

29.     The Proxy Statement omits material information regarding the financial projections for NortonLifeLock and Avast.

30.     For example, the Proxy Statement fails to disclose the line items underlying NortonLifeLock's and Avast's (i) Adjusted EBITDA, (ii) Adjusted Net Income, and (iii) Adjusted Unlevered Free Cash Flow.

31.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Evercore's Financial Analyses***

32.     The Proxy Statement omits material information regarding Evercore's financial analyses.

33.     The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, NortonLifeLock's public stockholders are unable to fully understand these analyses

- 12 -

and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Stock Issuance.

34.     With respect to Evercore's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed in the analysis.

35.     With respect to Evercore's *Discounted Cash Flow Analysis* of Avast, the Proxy Statement fails to disclose: (i) quantification of the number of fully diluted shares of Avast; (ii) quantification of Avast's net debt (calculated as total debt and certain other debt-like items less cash) as of June 30, 2021; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%.

36.     With respect to Evercore's *Discounted Cash Flow Analysis* of NortonLifeLock, the Proxy Statement fails to disclose: (i) quantification of the number of fully diluted shares of NortonLifeLock; (ii) quantification of NortonLifeLock's net debt (calculated as debt less cash and equity investments) as of July 2, 2021; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%.

37.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose each of the price targets observed and the source thereof.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the individual premiums for each of the selected transactions analyzed by Evercore.

39.     Without such undisclosed information, NortonLifeLock stockholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.   In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of or against the Stock Issuance.

40.     The omission of this information renders the statements in the "Opinion of Evercore -- Financial Advisor to NortonLifeLock" and "Certain VICI Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of NortonLifeLock will be unable to make an

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

42. Plaintiff repeats all previous allegations as if set forth in full.

43. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about NortonLifeLock's and Avast's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Stock Issuance.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for

### Violations of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of NortonLifeLock within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NortonLifeLock, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

54.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, NortonLifeLock's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NortonLifeLock, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until defendants disclose and disseminate the material information identified above to NortonLifeLock stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

- 18 -

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 18, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
          -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS